UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

GREGORY HAY and ALPHONSO PAYNE,

               Defendants.

**DECISION AND ORDER**
19-CR-170-RJA

Before the Court are objections by co-defendants Gregory Hay (Dkt. No. 364) and Alphonso Payne (Dkt. No. 365) to Magistrate Judge Michael J. Roemer's respective, comprehensive Reports, Recommendations and Orders ("RR&O"s) (Dkt. Nos. 344, 345), which recommend denying defendants' motions to suppress and motions to dismiss.  Hay and Payne ("Defendants") are charged in a 26-count Second Superseding Indictment (Dkt. No. 70) with shooting and killing Joshua Jalovick, a federal witness and informant, among other drug- and firearms-related offenses.[1]

The Court has considered the objections; the Government's opposition papers (Dkt. Nos. 374, 375); the defendants' reply papers (Dkt. Nos. 380, 381); and oral argument that was held on May 27, 2022 (regarding Payne's suppression-

---

[1] Hay is charged in Counts 1-13, and Payne is charged in Counts 1-3 and 7-13.  As of the date of this Decision and Order, of the five other defendants charged in this case, two have pled guilty and three are awaiting resolution of Hay's and Payne's objections.  Two of the remaining co-defendants have filed severance motions, which are pending.

related objections), June 2, 2022 (regarding Hay's suppression-related objections), and June 29, 2022 (regarding the parties' joint motions to dismiss).

A district court reviews any specific objections to an RR&O on a dispositive issue, such as a motion to suppress, upon *de novo* standard of review pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(3).  When a party does not object to a portion of an RR&O, or when a party makes objections that are conclusory, general, or without legal support, a district court reviews those portions for clear error.  *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).  Following review of the RR&O, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Under that standard of review, the Court adopts the RR&Os in part, rejects Payne's objections, rejects Hay's objections in part and accepts Hay's objections in part, denies Defendants' motions to suppress other than Hay's motion to suppress cell phone evidence based on an unconstitutional delay in obtaining warrants to search Hay's cell phones, denies Defendants' motions to dismiss, and otherwise resolves the parties' objections as detailed in this Decision and Order.

## DISCUSSION

The Court assumes the parties' familiarity with the background facts of this case, given Magistrate Judge Roemer's thorough recitation of the facts in his RR&Os, as well as the issues under review.  The Court therefore addresses those points only as necessary herein to explain its analysis.

I.    **Motions to Suppress**

A.    **Alphonso Payne**

An evidentiary hearing was held on August 11, 2021 before the Magistrate

Judge concerning events surrounding Payne's arrest on August 20, 2019 in

Pensacola, Florida, at his mother's residence, specifically: (1) the warrantless

seizure of his Apple iPhone 6 cellular telephone from inside that residence, (2)

custodial statements he made during an interview on August 20, 2019 following his

arrest that Payne argues were involuntarily made, and (3) the Government's delay in

seeking a warrant to search the cell phone's contents.  Payne seeks suppression of

digital evidence obtained from his cell phone and "anything derived from that

evidence," as well as suppression of statements he made when interviewed.[2]  It is

undisputed Payne has standing to challenge the seizure of his cell phone.

Magistrate Judge Roemer made extensive credibility findings in the RR&O

concerning the evidentiary hearing testimony (*see* Dkt. No. 345, pp. 16-19), finding

the testimony of the two Special Agents from the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") to be "wholly credible," and the testimony of

Payne's mother to be "generally credible."  Payne did not testify at the hearing but

submitted an affidavit (Dkt. No. 248-1) in support of his suppression motion.

Magistrate Judge Roemer "decline[d] to credit the self-serving statements in

[Payne]'s affidavit" including that the ATF agents "demanded entry" into his mother's

home and were "brandishing assault rifles," no one gave consent for the ATF agents

---

[2] Significantly, during the interview, Payne recanted his statement that he was not present at the scene of the murder.

to enter the apartment, Payne did not consent to the ATF agents seizing his phone, and Payne was "coerced" into making the custodial statements (Dkt. No. 345, p. 19).

### *Warrantless Search of Apartment and Seizure of Payne's Cell Phone*

Payne's objection concerning the warrantless search of his mother's apartment and the seizure of his cell phone centers on his request that this Court reweigh the credibility findings made by the Magistrate Judge.  He argues that the testimony of the two ATF agents was "unreliable on its face" and conflicting.  In turn, the Government notes that "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings," citing *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Quintana*, 12-CR-214S, 2018 WL 718565, 2018 U.S. Dist. LEXIS 19420, *3 (W.D.N.Y. Feb. 6, 2018) ("As a general matter, this Court defers to a magistrate judge's credibility findings in a criminal suppression context."), citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).  The Government argues that the findings in this case are both logical and supported by the record, and there is no need to conduct another hearing.

After the Court's independent review of the hearing transcript (Dkt. No. 295) and associated exhibits, the Court concludes that there is no reason to either disturb the Magistrate Judge's findings or reopen the hearing.  The Court also concludes that, as found by the Magistrate Judge, the Government met its burden to establish

voluntary consent given by Payne's mother to enter the apartment and by Payne and/or Payne's mother to seize Payne's cell phone, and in the alternative, the seizure of the cell phone was justified by the plain view doctrine.

Thus, the Court rules that the search and seizure were lawful.

### *Validity of Search Warrant for Payne's Cell Phone*

The Court fully adopts the Magistrate Judge's findings that the September 12, 2019 warrant (*see* 19-mj-5244-MJR-1, Dkt. No. 1 [search warrant application]) obtained to search Payne's cell phone was "plainly supported by probable cause" and not overbroad, and in the alternative, even if the judicial officer erred in finding probable cause, the related motion to suppress should be denied based on the "good faith exception" set forth in *United States v. Leon*, 468 U.S. 897 (1984). The Court therefore rejects Payne's challenge to the search warrant and evidence seized as a result of execution of the warrant.

### *Delay in Obtaining Warrant to Search Cell Phone*

Payne also challenges the constitutionality of the delay between the warrantless seizure of his cell phone and law enforcement's application for a warrant to search the phone, a matter of 22 days. Because Hay has raised the same objection regarding the two cell phones seized from his person, the Court address this issue below in conjunction with Hay's objection.

### *Custodial Statements*

Payne additionally argues that statements he made during his 1 ½- to 2-hour custodial interview were involuntary and taken in violation of his Fifth and Fourteenth Amendment rights.

Magistrate Judge Roemer "decline[d] to credit [Payne]'s claim that he was coerced into discussing his case in light of the live testimony and video recorded evidence to the contrary."  Dkt. No. 345, p. 19.  This Court has likewise reviewed the audio- and video-recorded interview,[3] and concludes that based on the totality of the circumstances, Payne's waiver of his *Miranda* rights before he made the custodial statements was knowing, intelligent, and voluntary—as proven by the Government by a preponderance of the evidence.  Moreover, there is no evidence in the record of coercive or other illegal activity by law enforcement in connection with his interview.

Payne's motion to suppress his custodial statements, then, is denied.

### **<u>Statements to Unknown Jailhouse Informant</u>**

The Court finds, based on its recalled representations of the parties during the oral argument, that Payne's motion to suppress statements he allegedly made to an unidentified jailhouse witness in Summer 2019 is premature, and is more appropriately raised in a later motion closer to the date of trial.  As such, the motion is denied, but without prejudice to renewal in the form of a motion *in limine*.

---

[3] The recording was admitted as Exhibit 6, with Exhibit 6A being the transcription of the interview to aid in the Court's review of the recording.  The recording is on a DVD, with the first video spanning approximately 1 hour and 20 minutes, the second video spanning approximately 1 hour and 29 minutes, and the third video being only a couple minutes long.  There are several instances of "dead time" spanning 10 to 20 minutes or so, including when Payne takes a restroom and cigarette break, and when the ATF agents leave the interview room and Payne is left in the room by himself.

B.    **Gregory Hay**

As to Hay, Magistrate Judge Roemer held an evidentiary hearing on July 21,

2021, concerning the following issues: (1) the constitutionality of the traffic stop of

Hay on July 16, 2019 at approximately 4:18 a.m., in the area of the Town of

Cheektowaga and the City of Buffalo, New York; and (2) in the event the traffic stop

was unconstitutional, whether Hay's custodial statements on that same date, at

around 3:00 p.m., should be suppressed as fruit of the poisonous tree or whether

they were sufficiently attenuated from the traffic stop to purge any taint of illegality.

It is uncontested that Hay had permission to operate the vehicle he was driving, and

thereby has standing to challenge the legality of the traffic stop.

### _Scope of the Hearing and Voluntariness of Hay's Custodial Statements_

The Court first notes that the foregoing was the agreed-upon scope of the

hearing.  _See_ Dkt. No. 280, p. 3.  When Magistrate Judge Roemer heard testimony

from the Buffalo Police Department ("BPD") officer who conducted the interview of

Hay along with an ATF agent, he directed a comment towards the Government upon

hearing certain testimony, "You're not making an argument that the confession was

involuntary or anything like that.  They haven't made that argument.  All they have

made [is] the fruit of the poisonous tree argument."  Dkt. No. 280, p. 103.  The

Government responded that the BPD officer in question was testifying for the

purpose of establishing attenuation rather than voluntariness, _i.e._, to show that

"there was a time lag between the traffic stop and the interview," the Cheektowaga

Police Officers who effectuated the traffic stop had no knowledge of the interview or

that Defendant was being federally investigated for murder and drug crimes, and

*Miranda* warnings were given. *See* Dkt. No. 280, p. 103.

As noted by the Magistrate Judge (*see* Dkt. No. 344, p. 10 n.3), only after the

suppression hearing and in Hay's post-suppression hearing memorandum of law did

Hay first raise the issue of the voluntariness of Hay's custodial interrogation, even

though the defense previously had access to the video- and audio-recorded

interview and Hay's memory of the interrogation. The Magistrate Judge therefore

declined to consider Hay's argument that his requests for counsel during the 1 hour

and 45-minute-long interview were "largely ignored."[4]

The focus of the suppression hearing was not on the voluntariness of Hay's

interrogation because Hay did not properly raise the issue pursuant to Federal Rule

of Criminal Procedure 12(b)(3)(C), and no good cause was shown for belatedly

raising this issue. *See, e.g., United States v. Lucas*, 338 F. Supp. 3d 139, 167

(W.D.N.Y. 2018) ("Defendant never raised an issue concerning [particular] evidence

obtained…, prior to filing his postsuppression hearing memorandum of law. Having

never moved to suppress this evidence, Defendant cannot attempt to raise the issue

for the first time in a posthearing memorandum of law."), citing *United States v.*

*Evans*, 12-CR-00235-RJA-JJM-2, 2014 U.S. Dist. LEXIS 180421, *6 (W.D.N.Y. Dec.

22, 2014) ("[I]n his post-hearing submission, [the defendant] raises a new ground for

suppression . . . that the government failed to establish that his *Miranda* waiver was

knowing, voluntary and intelligent . . . This argument should not even be considered,

---

[4] The audio- and video-recorded interrogation was admitted as Exhibit 18-A, with Exhibit 18-B being the transcription of the interrogation.

since it was not raised in defendant's pre-hearing motion.") (quotation marks and internal citations omitted), *adopted by United States v. Evans*, 12-CR-235, 2015 WL 224411, 2015 U.S. Dist. LEXIS 4979 (W.D.N.Y. Jan. 15, 2015).

Thus, the Court would consider the subject of Hay's confession only to the extent that it is pertinent to the attenuation doctrine, the latter which was fully addressed during the evidentiary hearing and in the RR&O.  However, because the Court has determined that there was no illegal conduct in connection with the traffic stop and seizure of Hay as set forth below, it need not reach the question of whether his statements made during the custodial interrogation were sufficiently attenuated from any purported illegality of the traffic stop to purge the taint of that illegality.  The Court therefore declines to do so herein.

### *Constitutionality of Traffic Stop and Seizure of Hay*

Hay first objects to the Magistrate Judge's alleged improper reliance on the credibility of Cheektowaga Police Officers, whose evidentiary hearing testimony the Magistrate Judge found was "wholly credible" while he declined to credit the contradictory allegations made in an affidavit by the mother of Hay's children about the condition of the vehicle at the time of the traffic stop (pertinent to the alleged violations of New York Vehicle and Traffic Law ("VTL") observed by the officers), as she did not testify at the hearing.  *See* Dkt. No. 344, pp. 8-10.  The Court adopts the findings of the Magistrate Judge, following its independent review of the hearing transcript (Dkt. No. 280) and hearing exhibits.

Hay next does not substantively contest that the traffic stop was justified by probable cause due to the Cheektowaga Police Officers observing Hay's violation of

the VTL, although he does suggest the stop was pretextual.[5]  Rather, he challenges the reasonableness of the stop because the Cheektowaga Police Officers who stopped Hay and arrested him did so in the City of Buffalo, outside of their jurisdiction, after they observed him driving with a broken headlight in the Town of Cheektowaga.[6]

As noted by Magistrate Judge Roemer, after addressing probable cause the next step of the inquiry "[w]hen law enforcement initiates a traffic stop outside the scope of its jurisdiction, [is for] courts [to] review the reasonableness of a seizure under the totality of the circumstances."  Dkt. No. 344, p. 12, citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("Reasonableness . . . is measured in objective terms by examining the totality of the circumstances.  In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.") and *United States v. Sed*, 601 F.3d 224, 228-229 (3d Cir. 2010) (rejecting the defendant's "categorical argument" that "his arrest in violation of Ohio law renders the conduct of the State Police unreasonable *per se*

---

[5] The Magistrate Judge observed that even assuming, *arguendo*, there was proof in the record that the stop was pretextual, that is of no constitutional significance.  The Court agrees, and notes that the stop was clearly supported by probable cause.

[6] During oral argument, the Court had the parties make notations on Exhibit 13A from the evidentiary hearing, a map of the area at issue, to further orient the Court in assessing the placement of the Cheektowaga Police Officers' and Hay's vehicles at the time the officers observed the inoperable headlight, and when they followed Hay and ultimately conducted the traffic stop.  *See* Dkt. No. 409 (Government Exhibit 13A, Dist. Ct.).  As explained by the parties during the argument, "North" is at the top of the map and "South" is at the bottom.  Anything south of the intersection between Langfield Drive and Sugar Road is Cheektowaga.  The officers were first traveling southbound on Eggert Road in the City of Buffalo while Hay was traveling northbound on Eggert Road in the Town of Cheektowaga.  Hay then turned left on Congressional Walk (a street off Eggert Road that is in the City of Buffalo), which is where he was ultimately stopped and arrested.

under the Fourth Amendment," while noting that the Court "still must determine whether the seizure was unreasonable under the Fourth Amendment").

In *United States v. Wilson*, 699 F.3d 235 (2d Cir. 2012), a case discussed at length in the RR&O, the Second Circuit first held that the vehicle stop in question was justified by probable cause on two fronts, both in the defendant's violation of the United States Code in intentionally failing to enter the United States at an officially-designated border crossing and also in the defendant's violation of the VTL in driving with an obstructed license.  *See id.* at 243-244.  Second, the Circuit held that the failure of one tribal police department arresting officer (who was also cross designated as a United States customs officer by the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE")) to acquire prior authorization to exercise customs authority, which contravened ICE policy, did not render the vehicle stop and subsequent search unconstitutional.  *Id.* at 241.  The Court explained that "[n]othing about the Fourth Amendment elevates an internal law enforcement agency directive regarding the chain of command to constitutional significance."  *Id.* at 244.

In light of that holding, the Circuit declined to determine the separate question of whether the breach of the two arresting officers, who were without authority under New York law to stop the vehicle outside the boundaries of the reservation but nevertheless stopped it "a short distance outside the reservation," affected the reasonableness of the stop in violation of the Fourth Amendment.  *Id.* at 241, 245.  Thus, *Wilson* explicitly did not address the scope of *Virginia v. Moore*, 553 U.S. 164 (2008), a Supreme Court case which held that although States may regulate arrests,

11

such as by limiting the circumstances when officers may arrest individuals for particular offenses, "the Fourth Amendment does not incorporate state law or agency procedures or requirements." *Wilson*, 699 F.3d at 243, citing *Moore*, 553 U.S. at 172, 176. In other words, *Wilson* did not clarify whether *Moore* reaches so far that it "renders geographical jurisdictional limitations irrelevant to the Fourth Amendment." *Wilson*, 699 F.3d at 245.[7]

Thus, Hay disputes the applicability of *Wilson*. He argues that because the Second Circuit explicitly chose not to analyze "the limitations on non-federal law enforcement who are (like the law enforcement officers in this case) limited geographically" (Dkt. No. 364, p. 18), the Magistrate Judge erred in relying on *Wilson* as "instructive" in finding that the stop of Hay in this case was constitutionally reasonable.

First, however, "*Moore* itself suggests that neither federal nor state statutes affect whether a seizure is unreasonable under the Fourth Amendment," and "[a]s to the territorial limit on [officers'] jurisdiction, *Moore* again implies that an extraterritorial arrest is not a *per se* violation of the Fourth Amendment." *United States v. Ryan*, 731 F.3d 66, 69-70 (1st Cir. 2013).

Second, despite what the *Wilson* Court chose not to evaluate, *Wilson* extracted the following principles from *Moore* and another Supreme Court case,

---

[7] The Court has located at least one District Court opinion that reasons a reading of *Moore* to impose no limitations on extra-jurisdictional stops "could lead to an absurd result." *United States v. Nelson*, 2022 WL 15497116, 2022 U.S. Dist. LEXIS 195974, *3 (S.D. Fla. Oct. 27, 2022) ("It cannot be that a local law-enforcement officer can traverse the country and, upon witnessing a potential crime that creates probable cause, stop and search people.").

*Whren v. United States*, 517 U.S. 806 (1996): "Read together, *Moore* and *Whren* stand for the proposition that the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and that the *violation of such restrictions will not generally affect the constitutionality* of a seizure supported by probable cause." *Wilson*, 699 F.3d at 243 (emphasis added).  The Court finds that the Magistrate Judge correctly relied upon these principles in finding there was no Fourth Amendment violation here, on this specific set of circumstances.

The RR&O reasons that the officers observed the VTL violation—the broken headlight—when Hay was in the Town of Cheektowaga's boundary and jurisdiction, just before Hay made a left turn onto Congressional Walk in the City of Buffalo.  And Hay's turn, "resulting in his travel a short distance into Buffalo while officers initiated the stop, is arbitrary in nature" and does not make the stop constitutionally unreasonable.  Dkt. No. 344, p. 14.  The Court agrees with this cogent and concise analysis of this fact-specific inquiry.

Hay argues, though, that the circumstances of the instant case do not render the extra-jurisdictional stop and arrest reasonable, when contrasted with the circumstances of other cases where courts have found searches and seizures reasonable—but where the latter involve factors not present here, such as flight, speeding, violence, danger, a consent to search, more serious alleged criminal conduct, and/or a greater nexus to the jurisdiction of the law enforcement officers who effectuated the stop.  To be sure, some other cases may involve some of these additional factors whereas Hay's case does not.  However, as noted above, there are no "bright-line rules" to what is reasonable (*Robinette*, 519 U.S. at 39), and Hay

has not cited any authority—nor could the Court locate any—suggesting that the *absence* of certain factors, *e.g.*, the factors not present here, renders a stop and arrest unreasonable as a matter of law.

The Court concludes from its study of extra-jurisdictional-traffic-stop case law that the facts and circumstances present here compel a finding of reasonableness.

For example, in one of out-of-District case the Court located, the arresting officer from the City of Miami Police Department first spotted the offending vehicle on a street that constituted the jurisdictional divide between the County's and the City's police departments (the westbound lane, which the vehicle turned onto, was within Miami-Dade County, whereas the eastbound lane was within the City of Miami). *United States v. Nelson*, 22-CR-20294, 2022 WL 16541236, 2022 U.S. Dist. LEXIS 196580, *1-2 (S.D. Fla. Oct. 20, 2022). The officer drove behind the vehicle and observed that it matched the description of a vehicle that had been photographed days earlier and bore a stolen license plate, and thus proceeded to follow the vehicle for five minutes and performed a records' check to confirm the license plate was stolen. *Id.* at *2. Upon confirming that information, the officer called other City officers to assist her in an extra-jurisdictional stop of the vehicle for a Florida misdemeanor offense, driving with a stolen license plate. *Id.* at *2.

The district court affirmed that an extra-jurisdictional stop and search after a "five-minute foray (about 1.1 miles) into Miami Dade from the City of Miami," while the City of Miami Police Department arresting officer awaited "backup as a safety precaution," was not constitutionally unreasonable. *United States v. Nelson*, 2022 WL 15497116, 2022 U.S. Dist. LEXIS 195974, *3 (S.D. Fla. Oct. 27, 2022); *see also*,

14

*e.g.*, *Ryan*, 731 F.3d at 70-71 (holding an extra-jurisdictional arrest of "an obviously intoxicated driver just outside that officer's territorial jurisdiction, after a lawful traffic stop," did not warrant suppression) (collecting cases); *Sed*, 601 F.3d at 228 (holding Pennsylvania trooper seizing defendant just over the Ohio border was reasonable, where the stop in Ohio was an "honest mistake and a *de minimis* one at that, considering the game of hopscotch [defendants] played across the Pennsylvania-Ohio border").

Next, Hay objects to the Magistrate Judge's alternative finding that even if the traffic stop and arrest of Hay was unconstitutional, the attenuation doctrine, an exception to the exclusionary rule, applies here. Instead, Hay argues, his custodial statements should be suppressed as fruit of the poisonous tree. Because of its finding that there was no constitutional violation with respect to the traffic stop, the Court denies Hay's motion to suppress statements as fruit of the poisonous tree and does not reach the issue of attenuation. It instead moves on to the next dispute.

### ***Validity of Search Warrant***

Hay has not objected to the RR&O's recommendation that the Court should deny his motion to suppress evidence obtained pursuant to the New York State search warrant, issued on May 2, 2019, to search Payne's residence of 9 Dignity Lane, Buffalo, New York; a 2009 Chevrolet Malibu; and Hay's person. Upon clear error review and for the reasons set forth in the RR&O, Hay's motion to controvert the search warrant is denied.

## II.   Delay in Applying for Warrants to Search Hay's and Payne's Cell Phones

### A.   Timeliness of Hay's Motion for a *Smith* Hearing

As noted above, the alleged, unconstitutional delay in law enforcement obtaining a search warrant for Payne's cell phone was addressed at Payne's evidentiary hearing.  The same issue, regarding Hay's two cell phones, was not addressed at Hay's hearing.  In the RR&O, the Magistrate Judge found that Hay's motion to suppress evidence on this basis was untimely, as it was made almost four months past the May 6, 2021 deadline the Magistrate Judge set to file pretrial motions, without "good cause" shown for the untimeliness as required by Federal Rule of Criminal Procedure 12(c)(3).

Hay objects and argues his *Smith* motion was not untimely and the Government and the Magistrate Judge mistakenly conclude that "defense counsel had everything necessary in its possession to make a *Smith* motion in May of 2021." Hay argues, rather, that he did not have the redacted search warrant application from the Government until August 27, 2021, and then he filed the motion on September 3, 2021, within days of being provided the warrant application.[8]

---

[8] Hay also argues he explicitly reserved his rights at the June 16, 2021 oral argument of the dispositive motions before the Magistrate Judge to file a suppression motion regarding cell phone evidence, once the Government provided Hay with the search warrant application that was anticipated "in short order," which the Government did not object to and the Magistrate Judge did not comment on.  There is no transcript of that Court proceeding on the CM/ECF Docket, and neither Hay nor the Government have supplied a copy to the Court.  Even so, the Government does not specifically contest this assertion.  According to Hay, following the June 16, 2021 proceeding, Hay's attorneys followed up multiple times with the Government requesting a copy of the search warrant application and were provided it on September 3, 2021.

There was also apparently some disagreement between the parties over whether a January 13, 2021 affidavit of standing that Hay provided to the Government, addressing his reasonable expectation of privacy in the 9 Dignity Lane residence, covered the two phones

16

According to Hay, he was diligent in obtaining the search warrant application and he did not receive it from the Government until after the deadline for dispositive motions.

In turn, the Government argues that Hay's August 2021 receipt of the search warrant application had nothing to do with the alleged unconstitutional delay issue, because information required to file such a motion was in Hay's possession as of a December 11, 2020 email sent by the Government to the defense (*see* Dkt. No. 307-1, p. 19 [noting that at the time of Hay's arrest on May 7, 2019, he was found in possession of two cell phones, for which federal search warrants were obtained on November 16, 2020, and attaching copies of the warrants but not the warrant applications]).

This Court respectfully disagrees with the Magistrate Judge that there is no good cause to excuse the timing of Hay's motion filing.  Although Hay's counsel may have known of two dates pertinent to the first *Smith* factor (the length of the delay) before the deadline for dispositive motions, *i.e.*, the date of his arrest and seizure of the cell phones, and the date the warrant was issued, Hay was missing information (1) regarding when law enforcement *applied* for the search warrant,[9] and (2) contained in the search warrant application in which the ATF agent applying for the

---

recovered from Hay's person on that same date.  Hay argues that those two phones were listed on the search warrant return.  Nevertheless, Hay later provided the Government a separate standing affidavit for the cell phones taken from his person incident to his arrest.

[9] In *Smith*, the delay was measured between the date of the seizure of a tablet, and the date the police applied to a judge for a warrant to search the contents of the tablet—not the date the warrant was in fact issued by the judge.

warrant explained the reason for the delay.  Indeed, in Hay's motion (Dkt. No. 298) moving to suppress the content of the cell phones and in the alternative, moving for a hearing, he relied heavily on the ATF agent's reasoning for the delay to argue that the Government failed to provide a strong enough explanation for the delay (the fourth *Smith* factor) to outweigh other factors, including the length-of-delay factor.

In the alternative to holding that Hay's motion was untimely, Judge Roemer addressed the issue of the delay on the merits.  The Court proceeds to do so in conjunction with analyzing the merits of Payne's *Smith* motion.

### B.    Application of *Smith*

Both parties disagree with the Magistrate Judge's application of the doctrine in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), which "clarified the standard for determining when a delay in searching a digital storage device after the device had been seized by law enforcement is so long a delay that it violates the Fourth Amendment."  *United States v. Green*, 18-CR-121-A, 2021 WL 1856949, 2021 U.S. Dist. LEXIS 88983, *2 (W.D.N.Y. May 10, 2021).  *Smith* lays out four factors that are "generally relevant" in deciding "whether the police have waited an unreasonable amount of time before seeking a search warrant: [1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item[s], and [4] the strength of the state's justification for the delay."  *Smith*, 967 F.3d at 206 (internal quotation marks and citation omitted).  The Second Circuit in *Smith* concluded that, as to the first factor, a month-long delay is presumptively unreasonable and therefore the 31-day period of delay in *Smith* weighed "substantially" in favor of the defendant.  *Id.* at 206-207.  It

observed that in a prior ruling, it had held that a delay of 11 days could under certain circumstances constitute an unreasonable delay, and the Circuit "'would normally expect police officers to secure a search warrant in considerably less time than' " 11 days. *Id.* at 206, quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

With regard to Payne, there was a delay of 23 days between the seizure of his cell phone on August 20, 2019 at Payne's mother's residence and the issuance of the warrant to search the cell phone on September 12, 2019, which amounts to a 22-day delay if discounting the one day Magistrate Judge Roemer was unavailable to review the search warrant application. In a rather extensive analysis, the Magistrate Judge found that the "modest" delay of 22 days weighs in Payne's favor, while the remaining factors weigh in favor of the Government (with the strength-of-justification factor weighing only "slightly" in the Government's favor). The Magistrate Judge concluded that considering both the *Smith* factors and all the facts and circumstances of the case, there was no unconstitutional delay. He found in the alternative that even if there was a Fourth Amendment violation based on the 22-day delay, the exclusionary rule should not apply, noting that Payne's cell phone was seized about 11 months before the Second Circuit's opinion in *Smith* was issued on July 28, 2020, and before *Smith*, "precedent ran both ways" as to what period was considered unconstitutional.

The Court hereby adopts in full the Magistrate Judge's thorough and well-considered analysis of the delay in obtaining the warrant to search Payne's phone, as well as the conclusion that the exclusionary rule should not apply here (*see* Dkt.

No. 345, pp. 26-35).  Thus, Payne's motion to suppress the evidence obtained pursuant to the warrant is denied.

In stark contrast to the 22-day delay in applying for the warrant to search Payne's phone, however, there was an over-18-month delay between the seizure of Hay's two cell phones from his person when he was arrested in Olean, New York, on May 7, 2019, and the November 13, 2020 applications for warrants to search the cell phones' contents, warrants that were issued a few days later by United States Magistrate Judge Jeremiah J. McCarthy on November 16, 2020 (*see* 20-mj-1182-JJM, Dkt. No. 1 [search warrant applications]).[10]

In the RR&O (*see* Dkt. No. 344, pp. 19-30), Magistrate Judge Roemer again comprehensively analyzed the *Smith* factors, finding that the "significant lapse of time" of approximately 18 months weighed in favor of Hay, the second and third factors weighed in favor of the Government, and the fourth factor—the Government's explanation for the delay—was "neutral."  The Magistrate Judge then found on balance that there was no unconstitutional delay, and in the alternative, the application of the exclusionary rule would not be appropriate.

The Court concurs with the Magistrate Judge's analysis of the second and third *Smith* factors but diverges in its analysis of the first and fourth factors.

---

[10] In its written opposition to Hay's objections, the Government noted that to date it had only been able to extract information from one of the two cell phones seized.  It also represented that it had found "substantial evidence" on the one cell phone "of [Hay's] drug trafficking and illegal firearms possession, as well as conversations between Hay and Jalovick and Hay and Payne." Dkt. No. 374, p. 14 n.5 and p. 21.

As to the first factor, the extremely long, 18-month delay is very concerning to this Court. While the Magistrate Judge held that the length-of-delay factor weighed in favor of Hay, the Court concludes that this factor should independently weigh *heavily* in favor of Hay. Indeed, the Court has been unable to locate an in-Circuit, post-*Smith* decision where even close to such a lengthy delay has been addressed. *See*, *e.g.*, *United States v. Corbett*, 20-CR-213 (KAM), 2021 WL 4480626, 2021 U.S. Dist. LEXIS 191323 (E.D.N.Y. Sept. 30, 2021) (101-day delay); *United States v. Green*, 1:18-CR-121 RJA (MJR), 2021 WL 1877236, 2021 U.S. Dist. LEXIS 91096 (Feb. 2, 2021) (three-month delay occurring over two years before *Smith* was issued), *adopted by Green*, 2021 U.S. Dist. LEXIS 88983 (W.D.N.Y. May 10, 2021); *In re Search Warrant*, 527 F. Supp. 3d 179 (D. Conn. 2020) (51-day delay).

Regarding the fourth factor, the strength of the Government's explanation for the delay, the Court finds that instead of being "neutral" as found by the Magistrate Judge, this factor also weighs in favor of Hay.

In his search warrant affidavit, the ATF agent explained that on May 7, 2019, when the search warrant was executed at 9 Dignity Lane by the ATF and the BPD, Hay was not present, so the ATF asked for assistance from the Olean Police Department ("OPD") in finding him. The OPD did so and took Hay into custody, locating the two cell phones on his person. Hay was later turned over to the BPD and prosecuted by the State. Following the July 1, 2019 murder of Jalovick, Hay was arrested on a federal warrant approximately two months later. It was around this time when the ATF agent "requested all of the evidence" from the BPD. According to the ATF agent, he first became aware of the cell phones on November

8, 2020, when he was reviewing OPD reports regarding Hay's May 7, 2019 arrest. He averred that he "had no previous knowledge" of the cell phones. Two days later, on November 10, 2020, the ATF agent confirmed BPD had the cell phones, which he took possession of on November 12, 2020, the day before the search warrant application was submitted to Magistrate Judge McCarthy.

The Magistrate Judge distinguished the strength-of-justification factor in this case from that of *Smith*, reasoning, "[t]he fact that [the ATF agent] and others were continuing to build their case against [Hay] during this time provides greater justification for the delay that was present in the *Smith* case." Certainly, that is one distinguishing factor to consider. In *Smith*, the officer who applied for the search warrant "engaged in very little investigation" of the defendant between the date the defendant was arrested and when the officer applied for a search warrant. *Smith*, 967 F.3d at 210. This was a driving factor in the *Smith* Court finding that the fourth factor weighed in the defendant's favor.

Even so, the Second Circuit in *Smith* also reasoned that neither an officer's heavy case load nor responsibility for "a large geographic district," without more, "entitle the officer to wait without limit before applying for a warrant to search an item that the officer has seized . . . unless there are important reasons why other matters must take a priority." *Id.* *Smith* also rejected reasoning that the case against the defendant was "really serious" and that the case took top priority for justifying the delay, as that undercut the Government's claim that the officer had to devote attention to other cases before applying for the warrant. *Id.* at 210-211.

Here, where there was a joint investigation between the ATF and the BPD according to the Government, and where members of the BPD personally took custody of Hay's cell phones, the ATF agent's lack of awareness for almost 18 months that the BPD possessed the phones is untenable.  Although the ATF agent and the BPD were not within the same law enforcement agency, they were working together on their investigation of Hay.  *See United States v. Tisdol*, 544 F. Supp. 3d 219, 227 (D. Conn. 2021) ("Under *Smith*, even communication snafus, particularly within the same police department where each detective was aware that the other's investigation utilized crime scene evidence, do not excuse an extended delay.").

Moreover, in the context of Hay's federal case, although law enforcement continued to build their case against Hay up until when the ATF agent applied for the warrant, as of November 13, 2020 when the warrant application was submitted, Hay and Payne had already filed non-dispositive discovery motions (*see* Dkt. Nos. 34, 35, 111, 112) and the Second Superseding Indictment (Dkt. No. 70) had already been returned approximately 2 ½ months before.  *See Smith*, 967 F.3d at 213 ("the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence").

The Court's instant findings, that the first factor weighs heavily in favor of Hay and the fourth factor also weighs in favor of Hay, tip the scales to a conclusion that the 18-month delay amounts to a constitutional violation.

As to whether invocation of the exclusionary rule is justified here, "the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the

product of recurring or systemic negligence."  *Smith*, 967 F.3d at 211.  This is

contrasted with the situation where constitutional violations "are the product of

isolated simple negligence," because excluding evidence in those cases would not

sufficiently deter police misconduct.  *Id.* at 211-212.

In the RR&O, the Magistrate Judge reasoned that, should the Court find a

Fourth Amendment violation stemming from the delay, the exclusionary rule should

not apply because "[i]t is apparent to the Court that the delay occurred because of

an instance of isolated negligence on the part of law enforcement," and *Smith*, which

clarified the law in this Circuit on what is considered constitutionally-unreasonable

delay, was not rendered until about 13 months after Hay's cell phones were seized.

The Court finds, however, that the police conduct here equates to

"reckless[ness]" or "gross negligence."  Unlike the timeline concerning Payne, where

his cell phone was seized and the search warrant application submitted between 10

and 11 months prior to the issuance of the *Smith* opinion, as to Hay, *Smith* was

issued months before the search warrant application was ultimately submitted.

Thus, even discounting the time within the 18-month delay when *Smith* had not yet

been issued, the ATF agent still took months to apply for the warrant after *Smith* was

issued.

As explained by the District of Connecticut in ruling that evidence from the

unconstitutional search of a cell phone would be suppressed under the

circumstances of a 34-delay, where the defendant's cell phone was seized a month

after the *Smith* decision came out, "the Second Circuit explicitly put law enforcement

on notice that month-long, unjustified delays will no longer be tolerated[.]"  *Tisdol*,

544 F. Supp. 3d at 227-228, quoting *Smith*, 967 F.3d at 213.  The *Tisdol* court further explained, "[i]n articulating that its principles should be used to guide the application of the exclusionary rule, *Smith* essentially directed that unreasonably delayed search results caused by police department administrative foibles are unacceptable."  *Id.* at 228.

The failed communication between law enforcement agencies working on a joint investigation, such that over 18 months passed before the ATF agent applied for a search warrant, is inexcusable.  Whether the communication error is attributed to the agent failing to expeditiously review the OPD reports regarding Hay's arrest, BPD officers failing to convey they still had possession of Hay's cell phones, or the ATF officer failing to ensure he had all physical evidence from the State prosecution (or some combination of all three) is of no moment.  *See In re Search Warrant*, 527 F. Supp. 3d 179, (D. Conn. 2020) ("The Fourth Amendment is focused on the right of the individual whose property is seized.  It makes no difference to the person subjected to a seizure whether state, local, federal, or a combination of various law enforcement officials hold that property once it is seized.  The deprivation is the same.").

As such, Hay's motion for suppression of cell phone evidence is granted.  A *Smith* hearing is unwarranted as there are no material facts in dispute; rather, the dispute boils down to the parties' disagreement over the appropriate application of those facts in weighing the *Smith* factors.

III.   **Motions to Dismiss**

Hay and Payne both object to the RR&Os' recommendation that the Court

deny the joint motion dismiss Counts 8 through 11 of the Second Superseding

Indictment for facial insufficiency, and motion to dismiss based on insufficient grand

jury proceedings and/or witness perjury.[11]

A.   **Facial Insufficiency**

The Court has reviewed, *de novo*, Defendants' challenge to the sufficiency of

Counts 8 through 11 asserting that a lack of federal jurisdiction can be gleaned from

the face of the Second Superseding Indictment because (1) as worded, the charges

fail to particularize certain referenced phrases (*i.e.*, "official proceeding" and "law

enforcement officer") and (2) the Government has failed to plead a "sufficient

jurisdictional nexus" because the charging document fails to allege as much in

connection with Jalovick, and Defendants' criminal acts.

Upon *de novo* review, the Court fully adopts the RR&Os' reasoning and

conclusion, in recommending that Defendants' motion to dismiss on facial

insufficiency grounds be denied.[12]

---

[11] In Payne's papers, he adopts and "incorporates by reference" the objections made by Hay that relate to the joint motions to dismiss (*see* Dkt. No. 365, p. 23; Dkt. No. 381, p. 12).  The Government argues this contravenes the specificity required of parties' objections by Local Rule of Criminal Procedure 59(c)(2), and thus the Court should decline to consider Payne's objections.  The Court appreciates the efficiency of Payne's approach and rejects this nonsensical argument by the Government.

[12] At oral argument, to the extent Defendants moved in the alternative for a Bill of Particulars (*see* Dkt. No. 428 [OA Tr., 6/29/2022], pp. 32-33, 35), the Court denies that request as untimely. The respective RR&Os did not address any request for a Bill of Particulars as to Counts 8 through 11, and Defendants' objections to the RR&Os did not request this form of relief. Indeed, Defendants previously moved for a Bill of Particulars but as to Count 1 of the Second

### B.      Grand Jury Proceedings and Witness Perjury

Defendants object to the RR&Os' recommendation to not dismiss the Second Superseding Indictment or order further disclosure based on "potential perjury in the grand jury."  In short, Defendants assert that their indictment was obtained (or may have been obtained) through the known use of perjured testimony by a cooperating witness ("Witness 1").  The motion is predicated on several unsolicited letters sent to Hay's attorney from Witness 1, that Witness 1 asked also to be shared with Payne's attorney.  Defendants summarize these letters as follows: "A witness who defense counsel believes was cooperating against defendant and testified in the grand jury took it upon himself, on three occasions, to write to defense counsel to explicitly say that he had lied to the Government and in the grand jury and that he was concerned he had perjured himself."[13]

The first letter is dated about two weeks after the Superseding Indictment was returned on May 13, 2020 (adding charges related to the July 1, 2019 murder of Jalovick, as well as defendants), and a couple days after Defendants were arraigned on the Superseding Indictment.  The next two letters are dated within the following three months, in 2020, and before the Second Superseding Indictment was returned on August 26, 2020.  The statements in the letters, as they can be reasonably

---

Superseding Indictment only, which charges a multi-drug conspiracy.  The Magistrate Judge denied that motion in a Decision and Order on December 29, 2020.  Dkt. No. 150, pp. 14-17.

[13] Defendants incorporate by reference the facts from their underlying motion, filed under seal. The Court has independently reviewed those papers and attached exhibits, as well as other relevant briefing from below.  *See* Dkt. Nos. 227, 230, 252, 264, pp. 8-11, 265, pp. 6-7.

interpreted, is that Witness 1 is suggesting he lied in the grand jury proceedings—and possibly about whether Defendants committed the murder.

During oral argument on the motion (*see* Dkt. No. 428, pp. 1-31), defense counsel requested disclosure regarding Witness 1's grand jury testimony and any evidence surrounding that testimony such as Witness 1's preparation, which may reveal the prosecution knew or should have known that perjured testimony was presented to the grand jury.  The defense essentially conceded that if and until they were able to review that evidence, and depending on what that evidence revealed, a motion for a hearing or motion to dismiss is not warranted and may become a "foregone issue."  The Government disclosed that it did not become aware of Witness 1's letters until May 2021, and asserted it had no knowledge of the letters before then—presumably because the letters' existence was not relayed to the Government by the defense until then.  Critically, May 2021 is approximately nine months after the return of the operative, Second Superseding Indictment.  Moreover, the Court heard for the first time from the Government that it had since spoken with Witness 1 and he has recanted his statements in the letters that his grand jury testimony was inaccurate.  In other words, Witness 1 now asserts that what he testified to in the grand jury was truthful.

Grand jury proceedings are presumed to be lawful and regular.  *See Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974).  Accordingly, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct."  *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  To be entitled to disclosure of grand jury proceedings, a defendant

must show a "particularized need" that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings. *United States v. Ulbricht*, 858 F.3d 71, 107 (2d Cir. 2017). Pursuant to the Court's supervisory power, it "may dismiss an indictment for prosecutorial misconduct if the grand jury was misled or misinformed, or possibly if there is a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process." *United States v. Percoco*, 13 F.4th 158, 179 (2d Cir. 2021) (internal quotation marks and citation omitted).

Defendants' main argument is that, based on "the apparent perjury in the grand jury by the cooperating witness," the Court should grant their requested relief (*see* Dkt. No. 364, pp. 25-26), including (among other things) production of grand jury transcripts, production of other discovery, and potentially for the Court to conduct a hearing regarding the circumstances of Witness 1's testimony in the grand jury to develop the factual record and "to determine whether intentionally false testimony was introduced and whether the Defendants were prejudiced as a result."

The Government's primary argument in opposition is that Defendants' argument about prosecutorial misconduct or impropriety before the grand jury at best equates to an argument that Hay's attorney possesses potential *Giglio*/ *Brady* material. The Magistrate Judge agreed, as the RR&O concludes that "Defendant[s] do[ ] not put forth any specific allegations of prosecutorial misconduct or impropriety before the grand jury. There are no factual allegations suggesting that the Government condoned, or was even aware of, any possible perjury by Witness 1.

Thus, [D]efendant[s] [are] not entitled to dismissal . . . Even if error occurred, [D]efendant[s] ha[ve] not shown that [they] suffered actual prejudice from any such error . . . [D]efendant[s] [are] also not entitled to review grand jury minutes."

The Court adopts the Magistrate Judge's recommendation to deny this branch of Defendants' motion to dismiss, and Defendants' request for alternative relief.  *Cf. United States v. Eldridge*, 09-CR-329, 2014 WL 257224, 2014 U.S. Dist. LEXIS 8519, *9-12 (W.D.N.Y. Jan. 23, 2014) (ordering disclosure of grand jury transcripts for *in camera* review where subsequent to a witness's grand jury testimony, "the Government learned that the witness was actually incarcerated at the time of the shooting, and *could not have been a witness to the murder he testified about*," and the Government superseded the indictment to remedy this) (emphasis).  However, the Government is reminded of its duty under *Brady v. Maryland*, 373 U.S. 83 (1963) to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment."  *Id.* at 87; *see United States v. Coppa*, 267 F.3d 132, 144-146 (2d Cir. 2001) (the Second Circuit has found that the failure to make pretrial disclosure of exculpatory information violates the *Brady* doctrine when it deprives the defense of a reasonable opportunity to investigate the information or otherwise use it effectively).

## **CONCLUSION**

For the foregoing reasons articulated in this Decision and Order, as well as reasons set forth in more detail in the RR&Os, the Court adopts, in part, Magistrate Judge Roemer's RR&Os (Dkt. Nos. 344, 345); rejects Payne's objections (Dkt. No.

365) in full; and rejects Hay's objections (Dkt. No. 364) in part and accepts Hay's objections in part.

Specifically, as to Payne's motions (Dkt. No. 223), the Court denies Payne's motion to suppress digital evidence obtained from his cell phone and "anything derived from that evidence," as well as motion to suppress statements he made when interviewed; and denies Payne's motion to suppress statements made to an unidentified jailhouse witness as premature, without prejudice to renewal.

As to Hay's motions (Dkt. Nos. 222, 298), the Court denies Hay's motion to suppress custodial statements as fruit of the poisonous tree, and does not reach the issue of attenuation and denies Hay's motion to suppress evidence obtained pursuant to the New York State search warrant, issued on May 2, 2019; but grants Hay's motion to suppress cell phone evidence based on an unconstitutional delay in obtaining warrants to search Hay's cell phones, pursuant to *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020).

The Court further denies Defendants' joint motions to dismiss (Dkt. Nos. 222, 227) based on facial insufficiency and alleged witness perjury in the grand jury.

The Court otherwise resolves the parties' objections as detailed herein and adopts on clear error review any points in the RR&Os which the parties have not objected to.

As ordered by the Court (*see* Dkt. Nos. 444, 446), the parties—and all counsel who will be involved in the trial of this case—shall appear on January 10, 2023, at 11:00 a.m., for a status conference.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   January 10, 2023
         Buffalo, New York